UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ALYSSA ISEMAN and ) | |
| POSITIVELY MEDIEVAL, LLC ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. _____ |
| ) | |
| M. JACOB WERNER, ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

Come the plaintiffs, by counsel, and file this complaint for legal malpractice against the defendant attorney for negligence in connection with a fraudulent investment scheme in which the plaintiffs lost hundreds of thousands of dollars.

## THE PARTIES

1. The plaintiff Alyssa Iseman ("Iseman") is a citizen and resident of the State of California. Iseman works in the entertainment industry in Hollywood, California.

2. The plaintiff Positively Medieval, LLC (the "Company") is a California limited liability company with its principal place of business in the State of California. The two members of the Company, Iseman and Katelyn McCarley ("McCarley"), are citizens and residents of the State of California. The Company was established on August 2, 2018 for the purpose of developing and producing a comedy related to life in the middle ages.

3. The defendant M. Jacob Werner ("Werner" or "Defendant") is citizen of the State of Tennessee and a resident of Knox County, Tennessee. Werner is a licensed Tennessee lawyer, operating a public law practice at 805 Cedar Lane, B6, Knoxville, Tennessee. Werner served as the attorney for Iseman and the Company in the transaction described below At all relevant times,

Werner had an IOLTA account at the office of Bank of America, located at 550 Main Street, Knoxville, Tennessee 37902.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction based upon diversity of citizenship. The parties are citizens of different states, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs. In particular, Plaintiffs have lost Six Hundred Fifty Thousand Dollars ($650,000) in principal alone as a result of the negligence of Defendant. As a result, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

5. This Court has personal jurisdiction over Defendant because he lives in the State of Tennessee, has transacted business in the State of Tennessee, maintains an office in Knoxville, Tennessee, is licensed by the State of Tennessee, and has provided legal services in the State of Tennessee.

6. Pursuant to 28 U.S.C. § 1391(b), venue lies in this judicial district because a substantial part of the acts and omissions giving rise to the claim of Plaintiffs occurred in this judicial district. Specifically, Defendant directed that the investment funds provided by Plaintiffs be deposited into his IOLTA account at Bank of America in Knoxville, Tennessee.

## FACTUAL ALLEGATIONS

7. In the summer of 2018, Iseman was approached by a California resident named Josh Hodgins ("Hodgins") about an investment opportunity that would help to finance the "Positively Medieval" project. Hodgins was a personal friend of McCarley, who is Iseman's writing partner.

Upon information and belief, Hodgins had been involved in financing other projects for the entertainment industry.

8. As a result of this initial communication, Iseman agreed to participate in a conference call with a group of other investors or participants involved in the investment opportunity. This conference call took place on July 30, 2018, and involved Hodges and three other individuals: Gene Francisconi, Ryan O'Quinn, and Mike Davis.

9. In the conference call, Iseman was told that there was a unique investment opportunity with a new group that had a passion for humanitarian projects, whose partners were in the entertainment industry, and which was interested in funding film/television projects. Iseman was told that this group had a banking network and was typically involved in multi-million-dollar deals.

10. As to the specifics of the investment, Iseman was told that the investor's funds would be put into an escrow account tied to the specific project. Among other things, Iseman was told that once the funds were put in escrow, proof of the funds would be provided to investors.

11. The July 30 call resulted in an additional conference call on August 21, 2018, with the same participants, plus an individual named Allen Myers. In this call, the investment opportunity was explained in greater detail. Iseman was told that the investor's funds would be tied to the purchase of a banking instrument, which would typically return three to four times the principal.

12. Continuing through August and into September 14, these individuals described the terms of the investment in greater detail. In particular, Iseman was told that "first moneys" were needed to pay up-front costs and expenses necessary to cause the registration of certain bonds and instruments. Iseman learned that the "first moneys" would be transferred into the escrow account of a licensed attorney who were serve as the "paymaster" for the funds. At some point, Iseman learned

that Defendant, a licensed Tennessee lawyer, would serve in this role. Defendant became the attorney for Plaintiffs in connection with the investment and fee resulting transaction.

13. Beginning during this period, Iseman began to have communications with Defendant by phone and text. In these communications, Defendant made representations about the legitimacy of the investment opportunity, described his role, and stated that Iseman would be given access to the IOLTA account once the funds were deposited. Defendant said he would oversee the disbursement of the funds and that Iseman would be given documentation about how the funds were utilized.

14. In early September, Iseman was sent a draft Joint Venture Agreement (the "JVA") which specified the terms of the investment. The JVA was between an entity named ER2 Global International Holdings, LLC ("ER2") and Plaintiffs. Allen Myers was identified as the authorized signatory for ER2. Defendant is familiar with and in possession of the JVA.

15. The JVA generally provided that ER2 had available securities, described as Government Bonds/Instruments (the "Bond Instrument"), that this Bond Instrument needed to be registered on international registration systems, and that ER2 had "prearranged institutional buyers" who were "ready, willing, and able" to purchase the Bond Instrument once it had been registered.

16. The JVA provided that Plaintiffs would invest Six Hundred Fifty Thousand Dollars ($650,000), which would be used to register the Bond Instrument and permit the transaction to proceed. Upon registration, the Bond Instrument would be sold immediately to one of the pre-qualified buyers. The JVA provided that, within 90-120 days, Plaintiffs would receive $5,000,000.

17. The JVA referenced Defendant as the "mutual attorney" for the parties, identified his IOLTA account at Bank of America, and attached a draft opinion letter in which Defendant validated the legitimacy of the transaction.

4

18. On or about September 19, 2018, Defendant prepared and signed a final opinion letter (the "Opinion Letter"), a copy of which is attached hereto as Exhibit 1.

19. On or about September 20, 2018, Iseman executed the JVA. But for the actions and representations of Defendant, her lawyer, Plaintiffs would not have entered into the JVA or made the investment.

20. On September 24, 2018, upon the request and direction of Defendant, Plaintiffs caused the transfer of funds (the "Funds") in the amount of Six Hundred Fifty Thousand Dollars ($650,000) to the IOLTA account of Defendant.

21. After the transfer of the Funds, Werner participated in several telephone calls in which he made representations about the status of the purchase of the Bond Instrument, repeatedly indicating that Plaintiffs' return on their investment was forthcoming.

22. By the end of January 2019, Iseman had become suspicious of the repeated excuses from Defendant and began to make demands for her funds. After several calls with Werner and the other individuals described above, Iseman demanded return of her principal on February 20, 2019. The Funds were not returned.

23. After making further excuses in calls on February 27 and April 2, Werner stopped communicating with Iseman.

24. The Funds have never been returned to Plaintiffs nor has any amount been paid to Plaintiffs in connection with their investment.

25. Despite the representations contained in the Opinion Letter, the Funds were not used for the expenses associated with the transfer of the Bond Instrument. In fact, upon information and belief, the funds were not used in connection with the purchase of a Bond Instrument or other security but were used for other purposes never disclosed to Iseman.

26. Notwithstanding the representations of Defendant, Iseman was not given access to the account.

## CAUSES OF ACTION

## LEGAL MALPRACTICE

27. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs one (1) through twenty-six (26) above.

28. Defendant is a licensed, Tennessee attorney.

29. At all relevant times, Defendant served as the attorney for Plaintiffs.

30. In providing legal services to Plaintiffs, Defendant failed to meet the standard of care required of lawyers practicing in the State of Tennessee. Among other things, Defendant failed to exercise reasonable care in protecting Plaintiffs' investment, in negotiating the terms of the JVA and in assuring that Plaintiffs' funds were used for the purposes represented. In so doing, Defendant was negligent.

31. Plaintiffs suffered damages as a direct and proximate result of Defendant's negligence, including but not limited to their loss of principal.

32. This action is brought within one (1) year of the date on which the cause of action accrued.

## BREACH OF FIDUCIARY DUTY

33. Plaintiff reallege and incorporates by reference the allegations contained in paragraphs one (1) through twenty-six (26) above.

34. As a result of his serving as the attorney for Plaintiffs, Defendant had a fiduciary relationship with them.

35. As a fiduciary, Defendant owed Plaintiffs the highest standard of care in connection with the transaction described above.

36. By his actions and omissions, Defendant breached his fiduciary duty.

37. Plaintiffs have suffered damages as a result of Defendant's breach of his fiduciary duty, including but not limited to their loss of principal.

## NEGLIGENT MISREPRESENTION

38. Plaintiffs re-allege and incorporate by reference the factual allegations contained in paragraphs one (1) through twenty-six (26) above.

39. Plaintiffs allege that Defendant is liable for the tort of negligent misrepresentation.

40. Defendant was acting in a transaction in which he had a pecuniary interest, namely receipt of legal fees for the services provided to Plaintiffs. Defendant supplied information to Plaintiffs for their guidance in a business transaction, including but not limited to the information included in the Opinion Letter, information about the use of the funds provided by Plaintiffs, information about the securities being purchased for Plaintiffs' benefit, and information about the expected return on the investment within no more than 120 days.

41. The information was false.

42. Defendant did not exercise reasonable care in obtaining the information or in communicating the information to Plaintiffs.

43. Plaintiffs justifiably relied upon the information provided by Defendant.

44. As a result of Defendant's negligent misrepresentations and material omissions, Plaintiffs have suffered damages.

# JURY DEMAND

Plaintiffs hereby demand a jury to try all issues in this cause.

WHEREFORE, Plaintiffs pray that the Court will:

a) Cause a summons to be issued and served upon Defendant, requiring him to answer within the time required by law;

b) Impanel a jury to try all issues joined;

c) Award a judgment to Plaintiffs for $650,000 or such amount as the proof will show;

d) Award Plaintiffs all available pre-judgment and post-judgment interest to the fullest extent available by law; and

e) Grant such other and further relief to which Plaintiffs are entitled.

Respectfully submitted,

/s/ Michael S. Kelley
Michael S. Kelley (BPR # 014378)
KENNERLY, MONTGOMERY & FINLEY, P.C.
550 Main Street, Fourth Floor
Bank of America Building
Knoxville, TN 37902
865-546-7311
865-524-524-1773 (Fax)
mkelley@kmfpc.com

*Attorneys for Plaintiffs*